BALDWIN, J.
I deem it unnecessary in this case to consider whether the defendant Botts has a common law lien upon the attached property, such as that of an ^innkeeper upon the horse of his guest, of a carrier upon goods bailed to him for transportation, or of an artizan in whose hands an .article has been enhanced by his skill and labour. However that may be, I think that for so much of his account as has been proved, he is entitled to priority of satisfaction over the plaintiff.
A creditor proceeding by foreign attachment can stand upon no better footing than his absent debtor, whose moneys, goods or effects he seeks to subject; and his claim to satisfaction therefrom is subordinate to the rights and equities of the garnishee. Glassell v. Thomas, 3 Leigh 113.
There are obviously cases of stoppage, retainer or set off on the part of a debtor founded in natural justice, and which Courts of equity ought to recognize and enforce. These were admitted to a very limited extent by the common law, which did not even allow mutual debts to be discounted or set off against each other; the effect of *66 which would have been to blend substantially cross actions, by permitting a matter of demand to be made a ground of defence. This narrowness often drove defendants at law into equity, where mutual debts were, to a great extent, applied to the reduction or extinguishment o.f each other, under the name of mutual credits, upon the fact or intendment of a reciprocal trusting by the parties on account of their respective debts. At length the English statutes of set off, which ours has. followed, authorized set offs at law in cases of mutual debts, though of a different nature, and in no wise connected; and to these statutes Courts of equity have conformed, and in general to the rules derived from the construction of them by the Courts of law. But the inherent powers of equity, founded in natural justice, have been in no wise abridged by the statutes. 2 Story’s Eq. § 1432. On the contrary, they have been to some extent enlarged; for now, in cases falling within equitable jurisdiction, *set offs are allowed of mutual debts, legal and equitable, however independent of each other, and of course without the necessity of resorting to the principle of mutual credits. Nor does equity always follow the express provision of the statutes, but extends them to cases falling within the principles of justice and policy which led to their enactment. Thus, though at law the debts must be strictly mutual, or in the same right, and so excluding set off between individual and representative debts, or individual and partnership or joint debts, and though the debts sought to be set against each other must be actually due at the time; yet there are cases of hardship, or oppression, or irreparable loss, or mutual trusting, which are allowed in equity as exceptions to these rules.
And although Courts of equity, no more than Courts of law, will, without agreement of the parties, enlarge a pledge or custody of goods, beyond the original purpose, into a security for an independent demand; yet there may be cases of gross injustice and irretrievable loss, in which the right of stoppage of goods so situated would be recognized and enforced in an equitable forum. As, if a person entrusting goods to the care and protection of one, then or afterwards becoming his creditor, should abscond or remove from the Commonwealth, and seek to withdraw and eloign them, without discharging or securing his indebtedness, I presume it would be a case proper for redress in a Court of equity, and especially if its aid were sought to accomplish the design.
It cannot, I think, be doubted, that a creditor who has no remedy at law, and comes into a Court of equity, where alone he can obtain relief, is subject to the application of the rule, that he who seeks equity must do it. Brown v. Jones, 1 Atk. R. 188.
In Shish v. Foster, 1 Ves. sen. 88, Bord Hardwicke, in commenting upon the rule that he who will *have, must) do equity, said, “That rule does not hold throughout, so as to tack things together independent in their own nature; but wherever the Court can do it, they will lay hold of any circumstance for it. And here, there is danger of the plaintiff’s losing his demand, if the estate should be taken from him, the defendant having frequently absconded; which makes the case very like the case,,of Jacobson v. Hans Towns, (or merchants of Almaign,) of part of whose estate the plaintiff Jacobson and his family had been lessees, and negotiated it for them. They brought an ejectment to recover, when the leasehold estate was expired. Jacobson objected that he was a creditor in a long account for negotiating, &c., and brought a bill that they should not take the estate from him till he received satisfaction of his demand; and an injunction was granted by Bord Macclesfield and continued by Bord King; not that he had anyr real lien on the estate, but from the difficulty of his getting satisfaction, if this estate was taken from him, as they were a corporation residing beyond sea; therefore they were restrained from recovering. The same reason weighs here as there.”
There is no judicial proceeding to which the maxim we are noticing can be applied with more propriety than a foreign attachment. It is a suit in equity-, in which the equitable rights of the parties are recognized, and enforced or protected, as the case may require; in which the plaintiff creditor seeking the aid of the Court, is without any remedy whatever at law; and in which the garnishee creditor, if overruled in his defence, is deprived of all means of redress, whether at law or in equity-. He cannot sue himself, and therefore his very possession and care of the attached effects expose him, in the event mentioned, not only to the priority of the plaintiff, but of all other creditors who may have levied their attachments. His case is unlike *that of a creditor petitioning in bankruptcy for priority, and who, if he fails in that, comes into participation with the other creditors.
It can hardly be denied in this case, that if the fund attached consisted of money belonging to the absent defendant, or of a debt due to him from the garnishee, that the latter would have a . right to set off against it a debt due to him from the absentee, or a liability which he had incurred as his surety. Ross v. M’Kinny, 3 Rawle’s R. 227. And what is to prevent goods attached and sold under the authority of the Court from being governed by those principles of equity which go beyond the express provisions of the statutes of set off, when required by natural justice, and to prevent it from being defeated?
It is unnecessary in this case to decide whether a garnishee who, with the consent of the absent owner, is the lawful custodian of goods attached, and has at the same time an independent demand against that owner, is entitled to priority of satisfaction over the attaching creditor. Throwing that out *67 of view, a connection of mutual demands may be properly regarded as a controlling circumstance upon questions of equitable set off or stoppage, 2 Story’s Eq. i 1434; and here there is a connection between the asserted ownership of the absent defendant and the claim against him on the part of the garnishee. In fact they arise out of the same transaction, and neither could exist without the other. The mare attached was left by Gayle with Botts for care, protection and subsistence, until a contemplated period, and then to be taken away by the former; and the claim of Botts is chiefir for that very care, protection and subsistence, without which there would have been no subject for the attachment.
This connection is strengthened by what in the nature of things must have been the tacit understanding '^between those parties. The mare was purchased by Gayle, a resident of Alabama, from Botts, and left with the latter to be kept till sent for, and he was to be paid for his expense and trouble in keeping her; and if she should not recover from a lameness which unfitted her for the turf, to be put to a horse, in order that a colt might be obtained from her for the benefit of Gayle. And Bott’s demand against Gayle is for the keep of the mare and her colt; a sum advanced for a season of the mare to a horse; and a due bill for some other consideration, executed to him by Gayle. Now it could hardly have been otherwise contemplated than that Gayle, when he should resume the possession of the property to remove it from the Commonwealth, was to discharge his indebtedness to Botts, especially for the keep of the mare and her increase.
The attached property having been sold by the authority of the Court, and purchased by the defendant Botts, and the proceeds of sale being less than the amount appearing from the evidence to be due to Botts (even if the items of his demand other than for the keep of the mare and colt be excluded), I think there is no error as regards the defendant Botts, in the decree of the Chancellor dismissing the plaintiff’s bill, after adopting suitable provisions for securing the rights of the absent defendant, if he should appear and shew cause against the decree within the time prescribed by law. But the decree is wrong to the prejudice of the plaintiff in regard to the absent defendant, in dismissing the bill as to him also, instead of giving the plaintiff a personal decree against him; the demand for which the attachment was sued out having been established by sufficient evidence, and the Court having jurisdiction of the subject by reason of the levy of the attachment upon the property of the absent defendant in the hands of the garnishee, which jurisdiction has not been defeated by the exhaustion of the proceeds of *sale in the application thereof to the equitable priority of the garnishee.
The other judges concurred in the opinion of Judge Baldwin.
The following is the decree of the Court.
The Court is of opinion that there is no error in the decree of the Chancellor as between the appellant and the appellee Botts. It is therefore adjudged, ordered and decreed, that so much of the said decree he affirmed, with costs to the appellee Botts. And the Court is further of opinion, that there is error in the said decree as between the appellant and the appellee Gayle, in dismissing his bill as to the said Gayle, instead of giving him a personal decree against that defendant, for the amount of, his demand, and his costs in the Chancery court. It is therefore adjudged and ordered,, that so much of the said decree of the Chancellor as is above declared to be erroneous, be reversed and annulled, with costs to the appellant against the appellee Gayle. And this Court proceeding to render such decree as the Chancellor ought to have rendered, in lieu of so much of his decree as is above declared to be erroneous, it is further adjudged, ordered and decreed, that the appellant do recover against the appellee Gayle the sum of 273 dollars 40 cents, with interest on 197 dollars 40 cents, part thereof, from the 1st day of July 1837, till paid, and on 76 dollars, the residue thereof, from the 1st day of July 1839, till paid, and his costs by him expended in the prosecution of his suit in the Chancery court.